The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Thank you. Please be seated. And we will pick up with our second case, number 24475, United States v. Wysinger. Mr. Beers. It pleases the Court. My name is Paul Beers. I want to thank the Court for appointing me to represent the appellant, Kendall Wysinger, in this very interesting and important appeal. I did not represent Mr. Wysinger in the court below. That was in Harrisburg. He was convicted of several counts, as the Court knows, received several life sentences, and the briefs are fulsome. I'd like to focus on counts 1 and 3 and 4, on the merits, and then sentencing issues that are with the Court. Count 1 is a sex trafficking charge under 18 U.S.C. 1591 and 1594. The issue, and he was found guilty, the issue there is not whether Mr. Wysinger may have assisted some prostitutes or aided and abetted them in engaging in their profession, engaging in prostitution. He did. There's no question about that. The issue is whether the government proved beyond a reasonable doubt that he did so, that he coerced these women into engaging in commercial sex trafficking within the ambit of the federal statute. He did not. Judge Dillon, the trial judge, while she overruled his Rule 29 motion, she said the evidence was weak, and she pointed out she was troubled by the fact that these women could buy drugs from any number of sources. They weren't required to buy from the defendant. She said the evidence is weak, weaker than she'd seen in a case like this, but she thought it was sufficient. That was error. It was insufficient. In this case, they presented no evidence of force or fraud, and I see in the brief, I don't think they're even arguing anymore who's charged with using force and fraud, but there's no, I think they're conceding there's no evidence of violence toward these women, no evidence of threats of violence. They are essentially resting their case at this point on coercion, that he coerced the women into commercial sex trafficking. They seem to be, I think their theory is these were not just prostitutes. They were heroin addicts or fentanyl addicts, and he exploited that by selling them drugs. Well, from your perspective, then, Mr. Bierce, does, in considering the issue of coercion, does it matter whether the women were addicted prior to their association with Mr. Weisinger? Yes, I, yes, Your Honor. Thank you for the question. I think this case would be a lot different if the defendant was a prostitute and got them, you know, sort of addicted to drugs and then they could not live without the drugs unless he supplied them with more drugs. That would be a different case. Counsel, I don't understand why that is when the statute goes out of its way to define coercion and serious harm in terms of a person of the same background and in the same circumstances as the actual victim. It seems as though the statute goes out of its way to say what you defendant did would be enough to compel a reasonable person of the same background and in the same circumstances as the victim to perform or continue to perform commercial sexual activity. So that sounds to me like Congress has gone out of its way to say, look, you kind of take your victims as you find them. If this woman's an addict, that's baked in to the definition. Your Honor, I mean, if we're going to read the statute that broadly, anyone that sells Okay. I'm really just reading the words that are here. Compel a reasonable person of the same background and in the same circumstances. What do you think that means? I think that means that the defendant to be guilty has to coerce them, has to use some sort of, has to overpower their will to get them to do what he wants, to perform an act or under the threat of suffering harm. And here I just said this may be a nitpicky point, but I think the statute says a person who, you know, maintains, solicits, patronizes, knowing that coercion will be used to cause the person to engage in the sex act. So that the coercion, you just have to know that coercion is going to be used to cause the person to engage in the act. The coercion, you don't have to be, you know, the reason that they began engaging, you know, the reason that they began in a profession or overcoming their will to force it to happen. The coercion is I think a different part of the statute. Yes, Your Honor. But I think to be found guilty, he has to be guilty. He has to have committed some coercive act or otherwise anyone that sells drugs to a prostitute, I guess is guilty of federal sex trafficking. I mean, they were free to buy. So what do you make of, let's talk about the evidence, right? So he, there is evidence that if believed, um, would show that he hosted one of these women on a website so that she could pay for heroin that she had already consumed. He had already given her heroin and then said, okay, to pay for that, you need, I'm going to post you on this website so that you can repay me. And then I collect, he collects almost all the money she makes and gives her rations for drugs, um, and controls her calls. Why is that not sufficient under the statute? Uh, Your Honor, I don't think that's the evidence. I think the evidence is before they ever met this gentleman, these ladies knew how to post on that website. It's called backpage.com. All the prostitutes in Virginia. Yeah. I'm not saying he taught them how or that he coerced them to do it. I'm saying she owed him money and so he said, well, here's how you're going to pay me back and I'm going to start, I'm going to take all your money and to get the drugs, this is how you're going to pay me. Now the jury could potentially read the evidence that way. I think the testimony of the judge was that the women asked him because they didn't have credit cards. They asked him to post pictures of themselves on Backpage. In fact, one says I directed him to, I asked him to. So, so that's not coercive. I mean, she, that's, that's a tool of her trade. She asked him to because Backpage wouldn't take cash and she didn't have a credit card. So they used her, his credit card. So for all those reasons, I would ask that the court find the evidence not simply weak as the district court found, but insufficient to find him guilty. Okay. Mr. Beers, one last question on that, if you don't mind. And that is in order for us to agree with you that the evidence was insufficient, would we have to find that a heroin withdrawal symptoms cannot constitute a serious harm within the meaning of the statute? No, I think the court could find that withdrawal symptoms are a serious harm. I mean, that, that certainly someone can become very sick. That's clearly true. They could become very sick. They could vomit. They could suffer physical injury from, from withdrawal. I don't, I don't dispute that at all. If that answers the court's question, I'd like to go on to counsel. Let me just ask you one last question about this so I make sure. You didn't object to the jury instructions on this, right? So there's no, is that right? I was not trial counsel. I'm sorry. I meant your client. Yes. Trial counsel did not object. I do have an issue with the trial instructions, but they were not objected to. That's right. I have covered that in brief. I'd be glad to answer your questions about that. Oh no, I'm sorry. Not that instruction. I meant the instruction on coercion and harm. So there was no objection to the way the jury was charged on this. We just have to look at the evidence and see whether a jury would have been compelled in the light of this evidence to find that this was a voluntary business partnership. That's correct. It's a sufficiency argument, and I also take issue with the instructions, but I do agree that the trial counsel did not object to the instructions. On counts three and four, trial counsel did object to the instructions. I'd like to go to that, and I think that is, this is reviewed de novo because he did object. The issue there is under section 841B1C, this is the statutory narcotic, schedule one or two, that resulted in serious bodily injury or death. He had, according to the government, a prior conviction or two, and therefore he was subject to lifetime enhancement under that statute. The judge, at the request of the government, gave the jury two choices. You could find him guilty on the counts three and four if you find beyond a reasonable doubt that he actually distributed the substance, or if he intended, if he possessed the substance with a distributive intent, that he intended to distribute. Trial counsel, I think, did a good job of asking the court to instruct, limit the government to proving an actual distribution, but the judge went with the government, and we have guilty verdicts. I think that was error. I think clearly the intent of Congress is that if someone's going to be enhanced and suffer a lifetime mandatory sentence of life in prison, there has to be an actual distribution by the defendant, not simply a possession with intent to distribute. What about the statute also applies that to someone who manufactures? But you wouldn't say that the person who manufactured had to distribute it. Is that right? If someone manufactures it? Yeah, the statute says if someone manufactures the drug, and the drug, serious bodily injury or death results from the use of that drug, then they are also subject to life imprisonment. But the person who manufactured didn't distribute it, they just made it. Yes, but in this context, I think there has to be, there's no manufacturing of this, there has to be an actual distribution by the defendant. Well, I guess I don't see why that is. If the statute says anyone who manufactures, distributes, dispenses, or possesses with intent to do any of those things, the statute applies to them, and then the enhancement applies if death or serious bodily injury results from the use of that substance. So, there are many of those things in the statute where you're not the person who distributed it. But if you're the manufacturer, that implies you're manufacturing for the stream of commerce. That's not what we have here. But by their argument, if I... Possession with intent to distribute, you're intending to distribute it in commerce. So under their construct of the statute, if I'm the drug dealer and I intend to distribute some drugs, but there's a break-in at my house, and someone steals those drugs and distributes them to someone else or ingests them and someone dies, I'm liable under the statute, criminally, and I don't think that's Congress's intent. They haven't cited any case law to support that. The case law we have, the leading cases from 2014, the Burge case by the Supreme Court, and clearly they talk repeatedly, the Supreme Court does, about the need for distribution, to show distribution as an essential element of the offense. That was a distribution offense in Burge, right? Yes, it was. Yes, it was. So, for those reasons, we'd ask the court to vacate his convictions on counts three and four. But if they're not vacated, I'd like to talk briefly about the sentencing issues with respect to section 841b1c. And I think the briefs really have narrowed us down to, you know, briefs, both of us go on and on and on in the briefs, but in the end, I think it's quite simple where we are. Now, he was enhanced because the government filed a section 851 information or notice saying you have two qualifying predicates. They filed that prior to trial. You have a Maryland conviction for drugs distribution. You have a Virginia conviction. So that's what his notice said, and at sentencing, he was enhanced based on those convictions. Now, I have challenged both convictions, and as a result of the briefing, we now know the government confesses plain error with respect to the Maryland conviction. The government and I agree that we're applying here the modified categorical approach. Yes, Nona. I'm sorry, can I? I found this very complex, and I agree that you and the government have helpfully narrowed your areas of disagreement, but one of the things that I am confused about is the standard of review here, because as you say, the government filed an 851 notice identifying two predicate offenses, right, and I believe that you and the government both think that one way or another, although I think you think this for slightly different reasons, there was an objection to the Virginia predicate, but there was not an objection in this context to the Maryland predicate. Not a direct objection, although I'm confused because in their standard of review section, they say it should be reviewed de novo, if you look at their standard of review in their brief, but the focus of the objections was to the Virginia objection. Right, and so it seems to me that if you have a notice that identifies two predicates for an enhancement that only requires one, and you only object to one, you haven't in fact objected to the enhancement. Well, Judge, I don't know why that would be, Your Honor, because... Well, let me tell you, because the district court judge would hear, there's a question about the status of the Virginia conviction, good thing I don't have to resolve it because I've got the Maryland one, and no one's objecting to that, so we're fine because you only need one. So that's why I think maybe you haven't put the district court on notice that you are objecting to application of the enhancement if you've only objected to one of two possible predicates for an enhancement that only requires one. Well, okay, he clearly objected to being enhanced. I think he got the point across, he did it through the career offender guideline. That's different, as you concede in your brief, it's a different enhancement. They have different rules, your whole argument is predicated on the idea that for one of them you need a categorical match to the federal definitions, and for the other you don't, so those are very, those are different legal contexts. But we have, even if we're on plain air, we have a concession by the government to its credit that they lose on the Maryland conviction. They continue, they want to argue about the Virginia conviction, and then, I see my time is up, can I, should I continue? Alright, very briefly, they have two arguments, they say, well, the Virginia conviction stands, and even if it doesn't, it has to be remanded, and I would agree it needs to be remanded, but give us an unrestricted remand and let us have a second fight at the predicate apple. If we're under plain air review, and I don't mean to rush you, but if we're under plain air review, just assume hypothetically we are, I fully understand your argument that we should follow Ruth and that Ward is not dispositive because that's a career offender question and not an 851 enhancement question, but there's no, it would be hard, or is there an argument that any error here in not following Ruth is plain, because we don't have any, this is at least an open question in the Fourth Circuit, isn't it? It is not, it is not. I'm not sure, first of all, this procedure, I'm not sure they have argued what the court is, they're not even, I haven't seen a plain air argument, objection. I'm very confused about everybody's argument on the standard of review. In fact, their standard of review stipulates this to know though, but in any event, we have two opinions published by this court, Kukulon v. Barr and Barr v. Barr, in which this court, as a matter of law, has said 18.2248, the Virginia drug statute he was convicted under is categorically overbroad. So it's plain. But that's in the context of comparing the entire Virginia drug schedule with the entire federal drug schedule. Exactly. That's not this case, right? Because the definition in 802 has four categories, narcotics, marijuana, depressants and stimulants, and steroids, and your client was convicted of Virginia Schedule I or II, a drug somewhere on those two. So why aren't we comparing those categories instead? Thank you, Your Honor. Because the Virginia, we know through stipulation in their brief and through those two published cases by this court, that the Virginia statute criminalizes conduct that the federal controlled substance statute does not. It's over, there are at least one or more. Right, but the definition in 802 is not the federal controlled substances. It's not everything on the list. And your client was convicted of something on Virginia Schedule I and II. So you're right about what our precedent says, but it doesn't win your argument. Judge, I really think it does, and other circuits recently, they have looked at the same question. But how, I mean, so a felony drug offense means an offense that is punctual by imprisonment for more than one year, that prohibits or restricts conduct relating to narcotic drugs, marijuana, antibiotics, steroids, or depressant or stimulant substances. That doesn't, it doesn't say that it is, you know, under the law of the United States, you know, controlled substances. That we're not, it's a term of art there, and those terms of art are defined. Those terms of art, yes, Your Honor, like narcotic drug is defined in 802. Elsewhere in 802, narcotic drug is used in that statute, is defined in 802. Okay, but Mr. Bierce, why would the statute in that subsection 44 talk about prohibited conduct relating to? Seems to me that the language relating to is a very broad basket, where Congress was trying to capture anything that met the criteria of more than one year in prison under a law that prohibits conduct relating to narcotic drugs. And how can you say that 801-248 in Virginia does not relate to narcotic drugs? Because narcotic drugs has a definition that we're supposed to use. Congress has given us. It's defined that term, Your Honor, and it's in 802. It's defining narcotic drug. So you're saying relating to is essentially surplusage? It doesn't expand the concept of a felony offense? Not outside the definitions Congress has given us. I mean, we have a federal statutory construct. There's no reason to start borrowing from different state definitions. Congress has defined. Well, no, I'm not talking about borrowing from the state. I'm talking about the relating to seems to be a very generalized term in the federal statute. It relates to, Your Honor, narcotic, which is defined federally. For example, to include cocaine in the definition of cocaine in 802 is narrower, clearly, for example, than the Virginia. No, no, I understand your argument. It's just, I guess, getting back to Judge Rushing's question, any law of a state that prohibits conduct relating to narcotic drugs. And you're saying that automatically refers to the federal definition? Yes, and I think that's why we're applying the categorical approach. They even say apply the conduct-based categorical approach as in Ruth. And I'm basically just presenting the Seventh Circuit's analysis. They cite not one case suggesting, outside the career offender guidelines issue, which we're not talking about, they cite not one decision accepting their argument that we get to borrow from state definitions of narcotic drugs that were not bound by Congress's definition. I'm sorry, one last question. Sure. Again, I'm just really wrestling with sort of how the context is for looking at these questions. The district court said twice, both at sentencing and then in the written statement of reasons, that with or without the enhancement, the 851 enhancement, the district court would have sentenced to life for these counts anyway, whether or not there was a mandatory minimum life sentence. Does that affect our review at all? No, Your Honor, I don't think it does. Again, I haven't seen an argument like that in a brief, but I don't think it affects. We're not talking about a statutory mandatory life sentence. I think if there's an error, this case needs to be remanded for complete reconsideration. Make sure the district court. Okay, and just one last question. Yes, Your Honor. Does the career offender designation in this case make any difference to the sentence? Because I found the sentencing issue extremely complex, but the one thing everyone seems to agree on is that the fact that your client was designated a career offender under the guidelines did not affect the guidelines range, did not affect anything about this sentence. You may be correct, Your Honor, but because I think this case, if my arguments on the merits are rejected, should be remanded, I wouldn't want it to go back with a finding that he's a career offender, and he's not. They didn't prove the career offender because that takes two controlled substance offenses, and the Maryland clearly doesn't qualify under Shepard. The Virginia may, but not the Maryland, because the Maryland, the Shepard documents don't even show that it's a drug offense. But if hypothetically, and this is purely hypothetical, if that were the only error in this case, is that something we would correct ordinarily, given that it made no difference to the guidelines calculation or to any of the sentences? I think so. If he's being enhanced as a career offender, I think it should go back for reconsideration. But he wasn't. I mean, I thought you agreed that his sentence was not enhanced as a result of that designation.  She found he was a career offender. And then she said, but it makes no difference to the guidelines range in this case. I thought what Judge Dillon said was, even if, even if I'm wrong about the 851 for some reason, and they, and he's not. She said both things, but the PSR says this, everything says this, that we're calling him a career offender, but to be clear, doesn't affect his guidelines range. This is the rare case where it doesn't affect the guidelines range. And I don't want to hold you up on this. I was just wondering, is it, it is not your position that everyone has missed something and this actually did affect the guidelines range. Your position is we should correct it whether or not it affected the guidelines range. Yeah. Yes, Your Honor. But if, if, if we're not going to, if he's not enhanced under, for the 851 purposes, I think everything needs to be re-looked at. Thank you. All right. If there are no further questions, this concludes appellant's argument. Thank you very much. Thank you. Good afternoon, Your Honors. Laura Rottenborn on behalf of the government. I'd like to start where we left off with Judge Harris's question about the career offender enhancement. First, it is the government's position that both predicate convictions qualified for the career offender enhancement, and therefore it was properly applied. But regardless, he had, Mr. Wiesner had an offense level of 43, and so to Your Honor's point, any error in applying the career offender enhancement would have been harmless. The guideline range would not have changed even if the career offender enhancement had not applied. But I, to correct my co-counsel, or excuse me, my opposing counsel's statement, the government does not concede that either predicate conviction was improper for the career offender enhancement. To the contrary, both predicate convictions categorically qualified. But you agree that there's no Shepard-approved proof that there even was a Maryland conviction? That is correct, Your Honor. How can it possibly qualify for career offender status? Because you use Shepard-approved sources when the modified categorical approach is being utilized in order to determine what specifically the defendant has been convicted of, so you can match it on to the divisibility analysis. Here, however, in the career offender context, the question is whether or not there is proof, by a preponderance of the evidence, that Mr. Wiesner was indeed convicted of, for example, Virginia 18.2248. And if he was indeed convicted of that offense, and because this court held in war that it's a categorical match not subject to the modified categorical approach, he then is subject to that predicate. Therefore, the only question is, was there sufficient evidence established by a preponderance of the evidence standard that Mr. Wiesner did indeed have that conviction? And in this case, there was. And in many cases, there is. For one thing, Mr. Wiesner did not contest it. It's listed in the PSR. He does not object to that conviction in the PSR. The only thing we have is the PSR, so probation officers from now on will just decide what offense people have committed. There's an obligation on the defendant to object if the PSR is inaccurate. And as this court has held in Terry and in other cases, when there's a fact in the PSR that goes unobjected to, the district court can use that fact to determine whether or not the fact has been established by a preponderance of the evidence, which here it has. And Mr. Wiesner, even on appeal, is not contesting that he was not convicted of those offenses. I think, I mean, I'm looking at the transcript, and the district court actually asked him, you have no evidence to present with regard to any denial of those convictions, correct? And he says, correct. So he didn't just fail to object. He affirmed on the district court's question that he had, he didn't deny the fact of the conviction, but he is asking, he objects to using them for the enhancements. Yes, Your Honor. He conceded he had the conviction. He merely disputed whether the convictions qualified as a matter of law. But there was absolutely no dispute, and there remains no dispute on this appeal, that Mr. Wiesner was in fact convicted both of Maryland distribution and Virginia distribution. There's therefore not a factual debate to be resolved on this appeal or on any remand. And because both Maryland distribution and Virginia distribution categorically qualify, there's no question left for this court to decide. The binding decisions of United States v. Ward and United States v. Johnson dictate that result with respect to the career offender enhancement. Now, I'd like to turn to the 851 enhancement, which is admittedly much more complicated. With respect to the definition of felony drug offense, which is the basis here for the 851 enhancement, it is an issue of first impression in this circuit whether the definition of federal drug offense requires this court, when the defendant is convicted under a state statute, to see how the state law defines both the punishment and the prohibited conduct, or whether this court should look to federal law for those definitions. This court has already resolved that exact question in two other contexts, one with respect to serious drug offense, which of course is the definition that provides an 851 enhancement. I don't want to interrupt your train of thought here, but you just said that we don't have any precedent directly on point. And so Judge Harris's question about the standard of review, I think, is important. Are we doing de novo review of this question or plain error? It's the government's position that with respect to the Virginia conviction, you are under a de novo review. Now, we vacillated on this internally because it is admittedly close, but we felt like the record needed to endorse the benefit of the defendant. He did not brief this issue in his objections. The defendant below only briefed the issue with respect to career offender. However, at sentencing, at which point the defendant had new and different counsel, Judge Dillon asked the attorney, are you making this objection also in the context of 851? And Mr. Cook, the then sentencing attorney appointed for sentencing, said, yes, Your Honor. That's at JA 1253. And so the government, looking at the record in the light most favorable to the defendant on that point, decided to brief this issue on appeal under a de novo review. But Maryland under plain error. Yes, Your Honor. So that brings me back to my question. I don't understand this hybrid standard of review. I would understand it if you needed both predicates to qualify for the enhancement. But for an enhancement where you only need one predicate, and if the government has two in your own account, you object only to one, how have you objected to the enhancement? I don't get it. The government framed the plain error standard of review with respect to the Maryland conviction because the defendant did not object to that conviction, and yet there was no judgment entered. The government did not provide the judgment document to the court to prove that conviction. And so if you look at, if the question Your Honor is asking is, do you have to object to each individual predicate, or do you object to the application of the enhancement, then I believe we would be under de novo review for the same reason that we're under de novo review for the Virginia predicate, which is on JA-1253, the defense attorney at sentencing said, we are adopting our arguments that we provided in writing with respect to the career offender enhancement to the 851 enhancement. So you read the defense counsel as having said, as to both Maryland and Virginia, we are objecting under 851. No, Your Honor, because the objection to the career offender enhancement also did not include any objection to the Maryland conviction. At no point did Mr. Weisinger object to the Maryland conviction. All right, I will let this go on one minute, but just so I am clear, the government's position is that if the government notices two possible predicates for an 851 enhancement, for which you only need one, and the defendant objects to one of them, the defendant has effectively objected to the enhancement, even though didn't object to another one, which would be sufficient for the enhancement. No, Your Honor, that's not the government's position. The government's position is that if you only object to one, and there's still one left, and then you object to the enhancement on appeal, then you would be under a plain error review standard. Well, isn't that exactly what you think happened here? That's what you just told me happened. Yes, Your Honor. So why aren't we under plain error? I'm just confused. So you're under plain error for whether or not the application of 851 was appropriate. Okay. But then you break it down. In order to resolve that, you're looking at both convictions, and because the government has conceded the Maryland conviction, and we are only looking at the Virginia conviction, you have sort of a twisted legal application here. It's twisted. It's twisted because we are agreeing that the defendant preserved the argument that the Virginia conviction should not qualify. Preserved an argument, but he didn't preserve an objection to the enhancement. Yes, Your Honor, that would be correct. That's exactly correct. It is an extraordinarily odd procedural posture. Agreed. I'm sorry, I've taken up too much of your time. No, you're absolutely right. It's an odd procedural posture, and the government has tried to view the record favorably to the defendant, to be fair, given that it is a life sentence case. Yes, and can I interrupt and say that I very much noted and appreciated your close read of the sentence and transcript. Thank you, Your Honor. But I do think it's extremely important that the court understands that the argument the government's making, and what we are asking this court to find as a matter of law, is that with respect to a felony drug offense, that the court should apply the same reasoning and reach the same conclusion as it did for controlled substances offenses, as opposed to the conclusion that the court reached for serious drug offenses. So there are three different types of drug offenses, all of which can be predicates in different contexts. Serious drug offense is the predicate under 924E, both for armed career criminals, and for 851 enhancements for drug crimes under 841A1A and A1B. Felony drug offense, which is the one at issue here today, of course, is the predicate for an enhancement under 841B1C, which is our case. And then, of course, controlled substance offense is an enhancement under the guidelines for career offenders. And all three definitions are slightly different, but felony drug offense is much closer to the definition of controlled substance offense than it is to the definition of serious drug offense. And that is why the government's brief has explained that the reasoning in ward should control the result in this case. When you look at the sentence structure for federal, excuse me, for felony drug offense, it maps on to the sentence structure for controlled substance offense. It requires either a federal or state offense, or in our case, also a foreign offense, that prohibits certain conduct of a controlled substance. Now, in our case, the exact language is conduct relating to, and then it has five categories. For controlled substance offenses, it prohibits conduct of a controlled substance. But controlled substance, for controlled substance offense, is not defined. It is not expressly incorporating any particular schedule, and it does not expressly incorporate the Controlled Substances Act. That is the same in felony drug offense, where you have... Can I stop you there? Because that I don't understand, because felony drug offense, I mean, it lists out these five terms of art. Narcotic doesn't say controlled substances. It says, instead of controlled substances, which is sort of a generic term, it gives us narcotic drugs, marijuana, anabolic steroids, depressant or stimulant substance, each of which is a term of art defined in the exact same statutory provision. So how can it... But your position is it's not actually referring to the definitions contained in the same provision of those five terms. Not when it's a state statute predicate, correct, Your Honor. And that's because if you compare felony drug offense to serious drug offense... You didn't do this, I don't think, but I looked at Virginia law to see if they define these terms, and they define some of them, but not all of them. So how am I supposed to figure out, you know, if a state doesn't have a definition of one of these terms? If I follow your approach, how am I supposed to figure out if something qualifies as a depressant or a stimulant or an anabolic steroid? That's right, Your Honor. Virginia does define narcotics, for example. It's in the Virginia Code, and in this case would include the drug for which Mr. Wisinger had been convicted of distributing. But just like the court found in Ward, a word that is not expressly defined in the Controlled Substances Act should be given its ordinary meaning. The opinion in Ward held that controlled substance should be defined as it would in Webster's Dictionary, for example, which is a substance... That seems a lot easier, like a controlled substance is a substance that is regulated, that the government says you can't have, that it controls your access to. But, you know, there's like 51 or 52 different approaches to what qualifies as a narcotic, or, you know, which your opponent points out based on, like, isomers of this and that and how are we supposed to know what the Webster's definition of, like, whether this cocaine isomer is included in a narcotic offense or not in the state of Virginia? Shouldn't we just look to the statutory definition? Well, the state of Virginia does have a statutory definition for narcotics, and it includes Virginia's controlled substances. And so you would not have to be left wondering. With respect to stimulants or depressants, the ordinary meaning of those words, it's not that complicated. It's whether or not... You're saying we would use the... It says stimulants or depressants... Depressants or stimulants, and you're saying don't just look at the exact same provision which sets out the definition. A drug which contains any quantity of barbituric acid or any of the salts of barbituric acid. And then it goes on, you say, forget that. That's not what they meant. When they use that term in the exact same provision, that is not what they meant. I absolutely think it's what they meant when the offensive conviction is a federal offense. So if the defendant is convicted of a federal drug distribution, then you would look at the federal definitions of narcotics, stimulants, depressants, and steroids. But what do we do when the state doesn't have a definition? I know Virginia defines some of these terms, but what if a state doesn't define any of these terms? If a state doesn't have a definition, for example, in its regulations or its code for narcotics. Right. It's the government's position, then, that you would apply the ordinary meaning of those terms. What does that mean? Just like they did in Ward. I mean, Ward looked at Webster's Dictionary to find that controlled substance is a substance regulated by law. The same could be true for narcotics and then steroids. What is the Webster's definition of narcotics? I'm unfamiliar. I don't know, Your Honor. I have not looked at it. It seems like it would be very important in this case. Well, in this case, it's the narcotics. Well, Virginia defines it. Right, right. So it wasn't applicable. But I bet it's not as specific as most states' definitions of criminal offenses. I mean, whether you committed a crime can really turn on, like, whether the molecules are attached, you know, on this part or that part of the chain, you know. It's hard to believe that Webster's is going to give us a specific enough definition, and maybe Congress meant us to use the definition that they provided. The key there, though, is we don't know because Congress did not say use these definitions. In serious drug offense, which is the enhancement for 841A1A and B and armed career criminal, that definition specifically says use the substances that are identified in the Controlled Substances Act. Use the definitions from the Controlled Substances Act. And they're referring, though, to a different provision. I'm still hung up on the fact that right in Section 802, there are definitions of all of these terms. Would Congress really have to say, like, oh, it means the same thing here as it did in the prior page of the same provision? Ward says yes to that question. Ward made the exact same conclusion with respect to the sentencing guidelines because for a controlled substance offense, it has to be a federal or state offense that prohibits conduct of a controlled substance. But Ward goes out of its way, out of its way to say, look, there is nothing about this guidelines provision that in any way alludes to any federal definition. This one does because it's all part of the same provision. This uses five terms of art that are all defined in the same provision. And I just, well, it doesn't. Yes, Your Honor. However, I would point out that the guidelines do have a reference to controlled substance. They have the drug quantity table. And the federal controlled substances run throughout the guidelines manual. And Ward courts did not conclude that the use of the word controlled substance in the guidelines meant the federal controlled substances. It allows for state controlled substances. And importantly, that's because there's also a two-part, two criterion to the definition. A controlled substance offense, just like felony drug offense in this case, required two things to be proven. One, that the crime is punishable by at least a year. And two, that the offense prohibited conduct relating to one of the five categories. And the Ward court held that you would not look with respect to the first criterion to federal law. So if somebody's convicted of Virginia distribution, you don't find an analogous federal statute to find out whether or not it would be punishable by more than a year. Instead, you look to the state law to determine whether or not the state crime is punishable by more than a year. So if you're going to look at the state law for the first criterion, why would you not look at the state law for the second criterion in the absence of explicit direction from Congress otherwise? I don't want to short circuit your argument, but do you have a fallback argument about whether if we do look at these federal definitions, whether the enhancement would still apply or the mandatory life sentence would still apply? Yes, Your Honor. Obviously, the Ruth court found that if you apply the federal definitions, the Illinois distribution statute did not apply. Here, this court should not reach the same result. One reason is that Virginia distribution does not read the same as Illinois distribution. Illinois distribution specifically criminalizes the distribution of positional isomers. The Virginia distribution statute does not. It talks about cocaine and its isomers thereof. It does not include positional isomers. And there is absolutely no evidence in the record that a positional isomer of cocaine is even a real thing. An internet search or a look at some of the district court cases, for example, in our own district, show that this is a question of fact. We are currently briefing this in our own district with chemists from the University of Virginia who are serving as experts to explain what the isomers of cocaine even are. And so there's an open fact question as to whether or not when Virginia distribution statute criminalizes cocaine and its isomers, what that even means. What are the isomers? Are you aware of any Virginia cases about isomers of cocaine or isomers of heroin? Yes, at the district court level. Yes, Your Honor. In federal courts, but not any Virginia state court cases. I am not aware of any state court cases resolving the question of what cocaine and its isomers thereof means as a matter of law in Virginia. No, Your Honor. I'm happy to research it and provide supplementary things. No, I didn't find any either, but I thought I'm sure both of you probably looked into it, so I wanted to make sure that I was aware. I'm not aware of any state guidance on that point. I am aware, however, that we are litigating this in our district courts, and it is certainly highly questionable whether or not there can even be such a thing as a positional isomer, let alone a positional isomer of cocaine. And to the extent that the Virginia distribution statute criminalizes distributing cocaine and its isomers, there is nothing in the record to show that cocaine's isomers are not also covered by the definition of narcotics and stimulants within the meaning of Section 802 of Title 21. And to that extent, the government's argument would be that because the clear definition of cocaine and its isomers could fall under narcotics or stimulants, then on this review here, there's no reason to reverse. But in the worst-case scenario for the government, a remand would be appropriate for fact-finding on whether or not cocaine and its isomers all qualify as either a narcotic or a stimulant within the meaning of Section 802 of Title 21. If the worst-case... This case is deeply complex. If we would otherwise be compelled to remand for fact-finding on cocaine and its isomers, would it matter that the district court has already told us with or without this enhancement the sentence is the same? Would we still require the district court to do a fact-finding into isomers if it doesn't affect the sentence? Yes, Your Honor, but then a no. Yes, because I don't think you can have an applied 851 enhancement stand as a legal sentence if the 851 enhancement is not proper. And so even though Judge Dillon may very well sentence Mr. Weisinger to life no matter what, I do believe it would be an illegal sentence if it was based on the application of an improper 851. However... And I have a continued complexity. The reason we don't have evidence about this is because this objection really wasn't made below. Instead, it was a career offender objection that just kind of was said, oh, yeah, and that applies to this enhancement, too. But in fact, they're completely different arguments. That's exactly right, Your Honor. And that's sort of why we're on a merry-go-round here. But I would emphasize that if this case gets remanded, the Maryland conviction will be proven. The Maryland conviction we have the judgment for. It was inadvertently not provided to the court. And so the great irony in all of this is if we go back, the government will offer up the Maryland judgment. The 851 enhancement on Maryland will apply, which is not subject to this exact same problem. And so it's the government's position that eventually the same outcome will be reached. It's just the machinations of how we get there. Okay, counsel. I have a question going to the other part of the definition of felony drug offense, which refers to an offense that is punishable by imprisonment for more than one year. Is it your position, then, that we have to look whether it's punishable by imprisonment for more than one year under the federal statute as defined in the terms listed later on in the statute? Or do we look to punishable by imprisonment for more than one year under state law? The latter, Your Honor, consistent with Ward. And, Your Honor, that's exactly why, because you're looking to state law for the first criterion, it's the government's position you should look at state law for the second criterion when the predicate offense is a state offense. That it would be unprincipled to look at the state law for the first criterion and not look at it for the second criterion. Okay, why would it be? Why would it be unprincipled to... The Ward court explained that... That when you're looking at the two criterion, because under a controlled substance offense it has the same two criterion as felony drug offense, that there's no question you should look at the state law to see if it's punishable by more than one year. It just seems to me that... And if you could help me with this, that what you're really saying is that it's more logical to look to state law throughout, because we know we look to state law in the beginning in terms of the length of punishment, right? Yes, Your Honor. And there's nothing particular in the wording of 44 that says you've got to look at the federal definitions. It just so happens that there are federal definitions for those terms. Is that your best argument? That's exactly right, and I would add to that that the wording of the definition is important, that the Ward court found that when... When it's stated that it's an offense, that prohibits conduct related to a controlled substance. That the that, the preposition, ties back to the offense. And so when you read the language of the definition, they're saying whether it's a federal offense that prohibits conduct of a controlled substance or a state offense that prohibits the conduct of a controlled substance. And I'm using conduct as shorthand for manufacturing or distributing or PWID. And so when you read the clause in its entirety, it can be read to indicate that what was meant is that you look to see whether the state is trying to criminalize a narcotics offense or whether the federal government is criminalizing a narcotics offense. And when the defendant is convicted of a state narcotics offense, it should qualify as a predicate. And that's really in the spirit here, too, of the congressional intent behind the enhancement. It would eviscerate congressional intent to find that all Virginia drug distribution felonies don't count as a felony drug offense. Clearly the intent was to capture state distribution offenses. And so by requiring the felony drug offense to be both punishable by more than a year and be an offense that relates to conduct involving narcotics, stimulants, depressants, and steroids. Why isn't it just phrased like the guideline then that Ward was addressing? I mean, I know that's unfair to ask, because that's asking to speculate about why Congress did it. But, I mean, that's so... It's much clearer to say, you know, state law relating to controlled substances than we know we're looking to state controlled substances. Yes, I think we all wish Congress had been more clear in how it defined this. And surely had they said controlled substances under either federal or state law, then we wouldn't have this debate. But the very fact that there's ambiguity means that the statute, or here the definition, is not unambiguous, and congressional intent should therefore matter. And the ambiguity that exists in the definition of federal drug offense, as to whether or not you call on the federal definitions or the state definitions when it is a state offense, should then lend itself to an inquiry as to what Congress would have intended here. And when you have a reasonable choice between two interpretations of a statute, one which would eviscerate congressional intent and one which would effectuate congressional intent, the government would urge the court to adopt the interpretation that effectuates congressional intent. If there are two reasonable interpretations of a criminal statute, don't we usually take the one that's more lenient toward the defendant? No, Your Honor. I believe when there's ambiguity in the statute, then it would be proper to look at other sources, both for congressional intent and... What about rule of lenity, though? Doesn't that come into play at all? In Shuler, the Supreme Court rejected the application of the rule of lenity when deciding serious drug offense. I would need to go back and refresh my memory on the... Now, could you direct us to the particular language that you're talking about? Yes. Yes, Your Honor. I did not prepare on that issue. I do remember reading it in Shuler, but my recollection is that it is... Okay. It's in Shuler, starting at pen site 787. Yeah. Okay. So it talks about when the rule of lenity should apply, whether... was not ambiguous, and so it did not apply the rule of lenity. So to your point, Your Honor... Okay. Which conduct, then, are you talking about? In Shuler, the issue was the definition of serious drug offense, not felony drug offense. So the 851 Enhancement for 841A and 841B. And the question was the language in serious drug offense and whether or not it left doubt that the offense involved the conduct... And they say conduct because they're trying to decide whether or not the conduct-based categorical approach applies of manufacturing, distributing, PWID, et cetera. And then the court concludes that because those terms describe conduct and do not mean offenses, then it is unambiguous and the rule of lenity would not apply. So to your point, where there is ambiguity, then the rule of lenity may be implicated. If we adopted your interpretation of this definition of felony drug offense, we would be splitting with the Seventh Circuit in lieu, right, on the definition? You would be coming to a different conclusion. With all due deference to the Seventh Circuit, they did not analyze this. They just simply came to the conclusion. We can do that. But I was just wondering, are there any circuit courts that have come out the other way, sort of have adopted your definition? It seems like we are a bit of an outlier, even under the guidelines, right? Most circuits have adopted the Jerome presumption that even the guidelines require a match with federal definitions. And so if we go one step further and say, also, you don't need a match with the federal definitions under 802.44, we'd be breaking with Ruth. Would we be with some other circuits? No, you would not, Your Honor. You would not be with any other circuit. And to the best of my knowledge, you would not be breaking with any other circuit. You would not be joining any other. You would neither be disagreeing nor agreeing with any circuit other than the Seventh Circuit. Right. I believe the only court to have addressed this issue is the Seventh Circuit in Ruth. Now, there is the Oliver case out of the Eighth Circuit that Mr. Weisinger cites, but that is applying the Illinois distribution statute. So they simply adopt Ruth there. The ward itself is a bit of an outlier, right? More circuits have gone the other way. There is a circuit split on the issue resolved in Ward. That's correct, Your Honor. Of course, in this circuit, Ward is finding precedent. I understand. But this would be a step beyond Ward. This would be applying Ward to the context of federal drug offense and rejecting the approach of the Seventh Circuit, at least with respect to the conclusion it reached. It did not provide any analysis on this point. It provided extensive analysis on deciding the 851 question. The Ward question. Yes. But then it just simply applied the federal definitions without any analysis. And I would emphasize here, too, that not only did they do it without any analysis. When they cite the federal definition that they're comparing against, the court first cites the Controlled Substances Act, not the definition for narcotics, stimulants, depressants, or steroids. And so to the extent that they are suggesting that there should be a comparison to the Controlled Substances Act, i.e. the Controlled Substances Schedules, that is flatly wrong and would discourage this court from adopting that approach. It looks like the Seventh Circuit's fallback position was to compare the state offense to the federal definition of narcotic. It did not do any analysis with respect to any of the other subcategories. There was no analysis as to whether, for example, a positional isomer of cocaine might qualify as a stimulant. So there was just absolutely no analysis in the opinion. It was a mere conclusion at the end. And because it concluded with a citation to the Controlled Substances Act, the government would suggest that it wasn't a sufficiently thoughtful conclusion that warrants deference in this case. And we would encourage the court to look at that issue anew. I am way over my time. If there are any additional questions on any of the other issues, I am more than happy to address the other issues. Thank you very much. We appreciate the extra time. Thank you, Your Honors. You have time for rebuttal, Mr. Beers. Thank you, ma'am. Please, the court, appreciate the time for rebuttal. I'd like to make four points. I think the first is the rule of lenity was very much reaffirmed by Justice Gorsuch in the Davis case the year prior to Shuler, which really is the leading case on the modified categorical approach. Judge, you would be breaking with other circuits. I mean, not just the Seventh. Ruth was even closer than this case, because in Ruth, at least the state Shepard approved documents showed it was cocaine. In this case, we don't even have that. So there are a collection of cases that emerged in the last two years that are right on point. There are three. The Eighth Circuit, same facts. You can't tell from the state Shepard approved documents what the substance is. You'd be breaking with the Eighth Circuit. That's 2021. You'd be breaking with the Third Circuit in Aveals, which is all cited in my reply brief. Third Circuit, 219, same facts. And I think Thompson, the Second Circuit, 2020, which is also cited on page 17 of the reply. So you would be breaking. And I think, as they've candidly said, no court has adopted this argument. Ms. Rottenborn is, again, talking now, she's talking about positional isomers and isomeric this and optical isomers. We don't get to all that because, as a matter of law, we know from Kukulon and Baugh and their stipulation in their brief that the Virginia statute criminalizes drug-related conduct broader than the federal statute. So that should be the end of the discussion. That's the whole point of the modified categorical approach is to make things simple and straightforward. I think Justice Gorsuch makes that point in Davis. And they're trying to complicate things by talking about isomers. But we know here that the statute in Virginia is broader. And therefore, there's categorical overbreath. And it's over. It's not a qualifying predicate. They're trying to undermine the categorical approach, the simplicity its categorical approach brings us by talking about chemistry and state definitions. As far as the standard of review, Judge, yes, I mean, you know, criminal defense lawyers waive things all the time. And it's uncomfortable on appeal when that happens. Well, they, in their brief, have made, for their own reasons, ethically, I think maybe strategically, they have decided this is a de novo review. And I would ask the court to consider that. They have waived any right to now argue otherwise. And I would think brought here on de novo review because of that. Finally, I'd like to go to the colloquy between Ms. Rodenborn and Judge Rushing about whose fault this is. And that implicates the scope of the remand that I hope we're going to have. Yes, trial counsel for the defense missed some things. But they did too. So the United States Attorney's Office had all the documents. And they understand, because they're super bright, just as these two lawyers are super bright. They know, because they go to trainings all the time in Columbia, South Carolina. And they've clerked for federal courts. They know what a Shepard-approved document is. And we have no explanation here, except they just say, we had them, but we just submitted the wrong documents or something. So on those facts, where there's no deus ex machina, no intervening cause, no change in the law, it's simply an issue of fact. They had a burden to carry below. And that was to introduce Shepard-approved documents for these predicates. And they blew it. They were amiss. And on that very simple set of facts, I think the case law in this circuit is clear. They don't get a second chance. Because you hear them say, oh, all these machinations Mr. Beers is making us go through, we're just going to do it to his client again. We're going to do a better job. They shouldn't have that second chance. That's a very important issue here. Mr. Weisinger has taken them on on appeal. And if you find that Mr. Weisinger is correct, it should go back, perhaps, but it shouldn't go back with them getting a fresh opportunity to do what they should have done the first time. They should be incentivized. I hate that word. They should be given an incentive to do a better job to begin with. Thank you very much. Thank you both. We appreciate it. Mr. Beers, we know that you were court appointed and especially appreciate your efforts today. Thank you. We are sorry we are not coming down to greet you in person, particularly after this marathon session. We wish we could say thank you face-to-face, but we very much appreciate your help today.
judges: Pamela A. Harris, Allison J. Rushing, Barbara Milano Keenan